UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEPHEN P. AMOS <br> 8959 Sycamore Ridge Road <br> Fairfax Station, VA 22039 <br><br> Plaintiff, <br><br> v. <br><br> THE DISTRICT OF COLUMBIA <br> John A. Wilson Building <br> 1350 Pennsylvania Avenue, N.W. <br> Washington, DC 20004 <br><br> And <br><br> EMEKA C. MONEME <br> Director, District Dept. of Transportation <br> 1213 Fern Street, N.W. <br> Washington, D.C. 20012 <br><br> And <br><br> PETER J. NICKLES, ESQ. <br> Interim Attorney General, <br> District of Columbia | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 08-00554(RMC) |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants District of Columbia, Emeka Moneme, and Peter Nickles (hereinafter "defendants"), by and through undersigned counsel, herein reply to the Plaintiff's Opposition to their Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), and state as follows:

1

In opposition to the defendants' motion to dismiss, Plaintiff argues that he engaged in speech as a private citizen and is entitled to First Amendment protection. *See* Plaintiff's Opposition at 10-14 ("Opposition").  His concessions in his Opposition, along with his admissions in the FAC, however, clearly demonstrate that he did not speak as a private citizen when he made his alleged disclosures to governmental officials because he concedes he had an official duty to report the alleged misconduct. *Id.  See also* FAC at ¶15, ¶ 56, ¶ 60, ¶ 61.

Plaintiff's also argues in his Opposition that it is inappropriate at this stage for the Court to consider whether Mr. Moneme or Mr. Nickles are entitled to qualified immunity, which is simply wrong as a matter of law.  It is well settled that immunity questions must be resolved "at the earliest possible stage in litigation" because if a case is erroneously permitted to go to trial and the defendant must "face [any] burdens of litigation," the value of qualified immunity is lost. *Richmond v. Potter*, 2004  U.S. Dist. LEXIS 25374, *16-17 (D.D.C. 2004)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

Plaintiff's Opposition also regurgitates a lengthy recitation of facts to establish Plaintiff's disclosure of an unlawful activity, but falls far short of setting forth any non-speculative facts that demonstrate his entitlement or right to relief under the Whistleblower Protection Act.  Accordingly, dismissal of the entire FAC is appropriate.  These defendants have included further argument in support of their Reply:

I.      **Plaintiff is Not Entitled to First Amendment Protection**

    **a. Plaintiff Did Not Speak as a Private Citizen**

Plaintiff does not set forth sufficient facts to establish that he was speaking as a private citizen.  Thus, he is not entitled to protection under the First Amendment.  Plaintiff's Opposition

does not dispute the Supreme Court's clear and unequivocal holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Plaintiff's concessions in his Opposition, along with his admissions in the FAC, clearly demonstrate that he was speaking as a public official when he made his alleged disclosures to governmental officials because he believed he had an official duty to report the alleged misconduct. *See* Opposition at 12-13, *see also* FAC at ¶ 56, ¶60, 61.  No reasonable inferences could conclude otherwise.

    Notably, Plaintiff's Opposition acknowledges that Amos' disclosures to Director Moneme may not be protected because he was "officially bound to report to Moneme" at DDOT. *See Opposition* at 12-13.  Furthermore, Plaintiff concedes that he had a general "duty to report" alleged violations regarding Fort Meyer as Chief of Staff charged with the responsibility of "assisting DDOT employees and management in achieving the highest level of integrity in order that the agency's external customers receive reliable and efficient service" *See FAC* at ¶15, ¶ 56, ¶ 60, ¶ 61.  Plaintiff also concedes he had an official duty to report the alleged misconduct to OIG pursuant to DDOT's Standard Operating Policy ("SOP"). *Id.* at ¶ 60.  Moreover, 6 DMCR 1803.8 also provides that "an employee shall report directly and without undue delay to his or her agency head and to the Office of the Inspector General of the District of Columbia any information concerning conduct which he or she knows, or should reasonably know, involves corrupt or other criminal activity, or conflict of interest". *See* 6 DMCR 1803.8.

    Plaintiff's concession that he had an official duty to report and disclose the alleged governmental conduct defeats his entitlement to any First Amendment protection for disclosures made to governmental officials in this case.  The D.C. Circuit opinions of *Wilburn v. Robinson*,

3

480 F.3d 1140 (D.C. Cir. 2007) and *Thompson v. District of Columbia*, 2008 U.S. App. LEXIS 1354 (D. C. Cir. June 27, 2008) are instructive, as both cases involved District officials who disclosed alleged misconduct pursuant to their official duties. The Circuit determined that the plaintiff in *Wilburn v. Robinson*, for example, was not entitled to First Amendment protection for complaints about discrimination because as Director of the Office of Human Rights (OHR), she "was hired not only to direct personnel matters in OHR but also to root out discrimination in the District government and, thus, when Wilburn commented on racial discrimination in the performance of her duties, she did not speak as a citizen." 480 F.3d at 1151. The Circuit in *Thompson v. District of Columbia*, 2008 U.S. App. LEXIS 1354 (D. C. Cir. June 27, 2008) also rejected First Amendment protection for the plaintiff when he disclosed concerns about corruption to officials and supervisors at the DC Lottery, because the complaints were directly related to plaintiff's official duties as an auditory and security officer where plaintiff was charged with "protecting the assets and personnel of the D.C. Lottery through a comprehensive system of physical and internal controls designed to detect fraud, waste, and abuse within all operational components of the D.C. Lottery." *Id* at *7.

     Despite Plaintiff's attempts to distinguish his case from *Garcetti* and its progeny, his case is not distinguishable. As *Wilburn* and *Thompson* and other Circuit court decisions have held, a public employee enjoys no First Amendment Protection when the speech is clearly made pursuant to their duty to report misconduct in the course or scope of their employment responsibilities. *See Battle v. Board of Regents for Ga*., 468 F.3d 755 (11th Cir. 2006) (finding no First Amendment protected speech when plaintiff admitted that she had a clear employment duty to ensure the accuracy and completeness of student files as well as to report any mismanagement or fraud she encountered); s*ee Hill v. Borough of Kutztown,* 455 F.3d 225, 242

(3d Cir. 2006)(holding that a public employee enjoys no First Amendment Protection when employee reported harassment to Borough Council when he had a duty as a Manager to report complaints).

In a desperate attempt to demonstrate that he was speaking as a "private citizen" to salvage his First Amendment claim, Plaintiff asserts that his case is similar to *Williams v. Johnson*, 537 F. Supp. 2d 141 (D.D.C. 2008), where the Court held, in <u>one</u> instance, that plaintiff alleged sufficient facts to sustain a First Amendment claim as to a private meeting plaintiff had with a D.C. councilman and her husband concerning governmental misconduct. *Id.* Amos is clearly distinguishable from *Williams* - first, there were no facts in *Williams* to suggest that plaintiff's job duties and responsibilities required her to meet with this councilman and second, plaintiff met the councilman privately with her husband. Amos, by contrast, concedes that he was obligated to report alleged governmental misconduct pursuant to his duties and responsibilities as Chief of Staff and he did not meet "privately" with OIG – he concedes that he met with OIG attorneys with his subordinate, Dannette Walker-Mincey, who was the Chief of the Integrity Compliance Unit. Plaintiff has no viable claim that he was speaking as a private citizen to governmental officials and he is not entitled to First Amendment Protection as a matter of law.

**b. Plaintiff Did Not Engage in Speech on a Matter of Public Concern to OIG**

Moreover, even if Plaintiff did speak as a private citizen, he alleges no specific facts about his disclosures to OIG about any alleged criminal misconduct. *See* FAC, generally. Therefore, to the extent speech concerning criminal misconduct is deemed speech on a matter of public concern, Plaintiff's own admission that he provided little, if any details to OIG because

5

they failed to offer him protection at the outset of his conversation, undermines any claim that he actually spoke to OIG on a matter of public concern. *See* FAC at ¶ 74, ¶ 79. Plaintiff's Opposition remarkably fails to even address this basic argument. *See* Opposition at 14. Plaintiff's failure to assert any facts concerning his actual speech on a matter of public concern to OIG defeats his entitlement to First Amendment protection.

### c. The District's Interest Outweigh Plaintiff's First Amendment Interest

Furthermore, the District of Columbia's interest in maintaining its comprehensive personnel system with strict regulations relating to the reporting of corruption, criminal activity or conflicts of interest by employees clearly outweighs the plaintiff's disruptive speech to the FBI. As 6 DCMR 1803.8 provides, "an employee shall report directly and without undue delay to his or her agency head and to the Office of the Inspector General of the District of Columbia any information concerning conduct which he or she knows, or should reasonably know, involves corrupt or other criminal activity, or conflict of interest". 6 DCMR 1803.8

Plaintiff's Opposition mistakenly focuses on *loyalty* as the government's primary interest in the balancing equation, however, the District's primary interest is enforcing the very regulations that enable the agency head and the OIG to investigate matters that involves criminal activity, corruption, or conflict of interest to determine whether misconduct has occurred. *See* 6 DCMR 1803.8  Thus, if Plaintiff reasonably knew that there was misconduct, his disclosures should arguably have been directed to the two agencies mandated to handle the matter: his agency head and OIG, not the FBI.  "When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered." *Connick* v. *Myers,* 461 U.S. 138, 153 (1983).  Plaintiff's own allegations clearly

demonstrate that time and manner of his speech was disruptive the District's investigatory process - he admittedly violated these regulations when he proceeded to report the alleged corruption to the FBI only eight (8) days after initially learning of these alleged violations, before OIG or Mr. Moneme could have reasonably been expected to complete any investigation of the alleged misconduct. *See record herein*. Plaintiff's Opposition fails to cite to any statutory or regulatory law that sanction his disclosures to the FBI under the circumstances presented in this case. *See* Opposition at 15-17.

### d. No Causal Connection Exists Between the Decision to Terminate and FBI Disclosures

Plaintiff must allege sufficient facts to demonstrate that his First Amendment speech was a substantial or motivating factor for the denial of a right or benefit- the only denial alleged by plaintiff in his FAC is his termination by Moneme. Plaintiff acknowledges, however, that Mr. Moneme's decision to terminate him came *before* there were any alleged disclosures to Chip Richardson concerning his meeting with FBI, which conclusively defeats any claim that his speech with the FBI was a substantial or motivating factor in the decision to terminate him. *See* FAC at 22-23.

Because Plaintiff's own averments fail to establish a causal connection, Plaintiff *now* alleges that the Defendant's "failure to retract the notice of termination" is an *additional* act of retaliation. *See* Opposition at 18-19. Plaintiff's belated claim, which was not included in Plaintiff's FAC, should be squarely rejected by this Court. Even if the Court were to consider this belated claim, Plaintiff's "retraction" claim is clearly a red herring given the lack of causal connection between the decision to terminate and the alleged FBI disclosures.

### e. Plaintiff Has Failed To Establish Municipal Liability under 42 U.S.C. § 1983

In his Opposition, Plaintiff is notably silent as to whether Mr. Nickles has final policy making authority with respect to Amos' termination, but claims that Mr. Moneme has final policy making authority in attempt to establish municipal liability against the District of Columbia under 42 U.S.C. § 1983. *See* Opposition at 19-20.  Plaintiff fails, however, to set forth any specific facts to demonstrate that Mr. Moneme has final policy making authority with respect to Amos' termination. *Id*.  The Supreme Court in *Pembaur v. Cincinnati*, 475 U.S. 469 (1986) and *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) carefully distinguished between those having mere *decision making* authority and those having *policy making* authority. Plaintiff alleges that Mr. Moneme directed and supervised DDOT and made personnel decisions, but those facts alone are insufficient to support a claim that Mr. Moneme has *final policy making authority* with respect to Amos' termination. *See* Opposition at 19-20.  In fact, Plaintiff's claim that Mr. Moneme provided him a notice of termination, but that his termination was not effective immediately, supports a finding that Mr. Moneme did not have final policymaking authority with respect to Amos' termination. *See* FAC at ¶ 147.  As such, Plaintiff's own averments demonstrate that there is no municipal liability against the District of Columbia.

### II. Mr. Moneme and Mr. Nickles Are Clearly Entitled to Qualified Immunity At This Stage of Litigation

Plaintiff asserts in his Opposition that "qualified immunity is inappropriate at this stage of litigation". *See* Opposition at 21.  Plaintiff is simply wrong as a matter of law.  Qualified immunity serves not merely as a defense but also an immunity from the burdens of litigation.

*Saucier v. Katz*, 533 U.S. 194, 201, (2001); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Immunity questions must therefore be resolved "at the earliest possible stage in litigation" because if a case is erroneously permitted to go to trial and the defendant must "face [any] burdens of litigation," the value of qualified immunity is lost. *Richmond v. Potter*, 2004 U.S. Dist. LEXIS 25374 , *16-17 (D.D.C. 2004)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

Qualified immunity is entirely appropriate at this stage- Mr. Moneme and Mr. Nickles should not be forced to defend themselves in litigation as defendants, as the purpose of qualified immunity is to protect governmental employees against lawsuits that have the following societal costs: l) expenses of litigation; 2) diversion of official energy from pressing public issues; 3) deterrence of able citizens from acceptance of public office; and 4) the possibility that the fear of being sued will dampen the ardor of all but the most resolute individuals. *See Harlow v. Fitzgerald*, 457 U.S. 800, 8l4 (l982). A failure to grant qualified immunity at this stage could have a chilling effect on the public work of these officials and would completely undermine the entire principal of qualified immunity.

In this case, it cannot be said that Mr. Moneme or Mr. Nickles knowingly violated plaintiff's First Amendment rights. Plaintiff's speech was made in the course of his duties and not as a private citizen. Plaintiff's communications clearly enjoy no First Amendment protection. Mr. Moneme was entitled to discipline the plaintiff given the fact that his communications were made as a government employee. Even if the Court finds that plaintiff's speech was made as private citizen, a reasonable person in the defendants' position *would not have known* that the speech was clearly protected by the First Amendment and not subject to disciplinary action. Mr. Moneme and Mr. Nickles are thus entitled to qualified immunity as a matter of law.

### III. <u>Plaintiff is Not Entitled to Whistleblower Protection</u>

**a. Plaintiff Has Only Alleged Speculative Facts In Support of His Whistleblower Claim**

Although the Plaintiff claims that there were violations of a federal regulation related to Fort Meyer, who is alleged to have fraudulently qualified for, and maintained, Disadvantaged Business Enterprise ("DBE") status with the District of Columbia, Plaintiff offers only speculative facts in support of the claim and acknowledges that federal law allows for broad discretion in qualifying for DBE status. *See Coppens v. DOD,* 117 Fed. Appx.110, 112 (Fed. Cir. 2004)("An employee who knows that a regulation allows broad discretion, cannot reasonably believe that exercise of such discretion is a violation of the statute."). Despite the lengthy recitation of facts in Plaintiff's FAC, the FAC falls far short of quantitatively setting forth any non-speculative facts that demonstrate his entitlement or right to relief under the Whistleblower Protection Act.

**b. Mr. Nickles Did Not Engage in Any Prohibited Personnel Action. No Prohibited Personnel Action Was Taken Based on FBI Disclosures**

Plaintiff's FAC contains no facts to support a finding that Mr. Nickles took personnel action against him. Notably, Plaintiff's Opposition fails to cite to any law, rule, or regulation that gives Mr. Nickles the authority to take any personnel action against the Plaintiff required to establish a claim under the Whistleblower Protection Act. *See Zirkle v. District of Columbia*, 820 A.2d 1250,1260 ("the WPA requires an employee to demonstrate "by a preponderance of the evidence that an activity proscribed by § 1-615.53 was a contributing factor in the alleged prohibited personnel action against [the] employee."). D.C. Code § 1-615.52 (a) (5) defines prohibited personnel action as the following:

>includes but is not limited to: recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfer, reassignment, or detail; referral for psychiatric or psychological counseling; failure to promote or hire or take other favorable personnel action; or retaliating in any other manner…."

D.C. Code § 1-615.52 (a) (5).  D.C. Code § 1-615.53 states as follows:

>§ 1-615.53 Prohibitions
>A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order"

D.C. Code § 1-615.53.

In his Opposition, Plaintiff's cites Mr. Nickles' close advisory "relationship" to the Mayor as the sole reason for his alleged authority to take *corrective* action.  Plaintiff's argument misses the point- under the WPA, the relevant inquiry is whether Mr. Nickles was a *supervisor*, who threatened to take or took a *prohibited personnel action* against the Plaintiff as a result of his disclosure, not whether Mr. Nickles had the authority to take *corrective* action. *See* Opposition at 27. *See* D.C. Code § 1-615.52 (a) (5).   The FAC simply lacks any allegations that Peter Nickles, former General Counsel to the Mayor, had any personnel authority over DDOT or its Chief of Staff, as a supervisor empowered to take adverse action against the Plaintiff. *See* Opposition at 27, *see* FAC, generally.  Plaintiff's failure to allege sufficient facts is fatal to his WPA based on any alleged action or lack of action taken by Mr. Nickles.

Furthermore, no prohibited personnel action was taken based on FBI disclosures.  Plaintiff correctly notes that in order for a plaintiff to prevail on an action under the WPA, the employee must show that: 1) that he made a protected disclosure and 2) that such a disclosure was a contributing factor in the employer's decision to take an adverse action." *See* D.C. Code § 1-615.54 (b).  Plaintiff acknowledges that Mr. Moneme's decision to take adverse action and

terminate him came *before* there were any alleged disclosures to Chip Richardson concerning his meeting with FBI, which conclusively defeats any claim of a causal connection between the adverse action and the alleges protected disclosures. *See* FAC at 22-23.  As previously stated, Plaintiff's claim that there was no "retraction" of the notice of termination after the alleged disclosures is simply a red herring and of no relevance to the Court's analysis of whether there was a causal connection.

      WHEREFORE, for all the foregoing reasons, the defendants respectfully request this Court to dismiss Plaintiff's FAC.

                        Respectfully submitted,

                        PETER J. NICKLES
                        Acting Attorney General for the District of Columbia

                        GEORGE C. VALENTINE
                        Deputy Attorney General, Civil Litigation Division

                          /s/   Ellen Efros
                        ELLEN EFROS [250746]
                        Assistant Deputy Attorney General, Civil Litigation Division

                         /s/   Leah Taylor
                        LEAH BROWNLEE TAYLOR [488966]
                        Assistant Attorney General
                        441 4th Street, N.W.
                        Sixth Floor South
                        Washington, D.C. 20001
                        (202) 724-7854; (202) 727-6295
                        leah.taylor@dc.gov